█. RUTH H. KRUGER, Doing Business as KRUGER NURSING HOME, Petitioner, v. HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent State Commissioner of Social Services, dated December 29, 1972, which, with respect to petitioner's nursing home at 379 Webster Avenue, City of New Rochelle, and after a hearing, refused to grant petitioner "a waiver of the relevant provisions of the Life Safety Code of the National Fire Protection Association (21st Ed., 1967)" and

to certify petitioner "as a provider of skilled nursing home care" under the State "Medicaid" program established under title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396a *et seq.*). Determination annulled, on the law, without costs, and the respondent State Commissioner of Social Services is directed to issue a conditional waiver to and a certification of petitioner as a provider of skilled nursing home care. The condition of the waiver shall be that within 45 days after issuance of the waiver petitioner shall (1) correct or replace the interior stairway smoke-partition type doors so that they shall be of solid wood core construction and shall have positive latching; (2) if directed in the waiver, (a) replace or correct the doors to the patient rooms so that they shall also be of solid wood core construction and (b) cover the exterior metal stairway and place metal glass along the run of that stairway. Petitioner is the proprietor of one of the "Maxwell" nursing homes (*Maxwell* v. *Wyman,* 458 F. 2d 1146) which were originally decertified by the State Department of Social Services at the end of 1971 for failure to comply with the requirements of the Life Safety Code of the National Fire Protection Association as required by title XIX of the Social Security Act (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. :[F], subcl. :[i]; Code of Fed. Reg., tit. 45, § 249.33, subd. [a], par. [I], cl. [vii]). (See *Matter of Maxwell* v. *Lavine,* 41 A D 2d 346.) By Federal court action, however, these decertifications were stayed pending hearings concerning whether a waiver of the applicable sections of the Life Safety Code should be granted (*Maxwell* v. *Wyman, supra*). Waiver is allowed where unreasonable hardship is shown and the waiver will not adversely affect the health and safety of the patients (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]). The subject facility has been in existence since 1941. It has two stories, with a dormered attic, and a basement. At the hearing, the State Department of Health adduced substantial evidence that the structure was in fact wood frame and it was directly and inferentially established that the facility was not of two-hour fire-resistive construction as required by the Life Safety Code (see sections 10–1322 and 10–2111 thereof). The Department also elicited evidence on the subject of the adequacy of means of egress. However, petitioner adduced massive, uncontroverted evidence that the facility has extensive fire protection systems and devices, including an automatic sprinkler system, with a coded alarm to the municipal all-professional fire department to alert the latter that an institution is involved and that extra equipment and men are needed. It was also established that the facility has a fire protection and evacuation program drawn up by a recognized consultant. There are quarterly inspections by this fire department and unannounced inspections and drills by the fire protection consultant. Petitioner's expert was of the opinion that the health or safety of the patients was not adversely affected by the structure or anything else in the home. Respondents presented no witness with a contrary opinion. Further, there was also evidence that except for the December, 1971 "Maxwell" decertification notification, petitioner had never received any notice from any agency that she was in noncompliance with any fire protection law or regulation or order or that she was required to do more than she had done in the way of fire protection. In fact, petitioner had volunteered to make certain exterior stairway corrections suggested by her own fire protection engineer and received no response from respondents with respect to requests for approval of that proposal. She was and is willing to make any necessary improvements. It is of interest that in February, 1959 the State Department of Social Welfare wrote petitioner: "This [visit to nursing home on January 29, 1959] was a supervisory visit for the purpose of determining your continuing conformity

to the Board Rules and Regulations. As a result of our findings your home has been classified as a Private Proprietary Nursing Home with a maximum bed capacity of 47 patient beds. It is gratifying to us that as a nursing home administrator you have consistently tried to improve the standards of care. You have made many and constant sacrifices to operate a good and safe facility. This is evident by the installation of a standard type sprinkler system throughout the home. This protection and the enclosures of the stairways complement each other and provide additional protection in the event of fire." Under all the circumstances, we are of the opinion that although Life Safety Code defects were shown, petitioner clearly established that they were waiverable and there was no substantial evidence to the contrary (see *McKinney* v. *Lavine*, 42 A D 2d 572). Unlike, for example, the absence of a sprinkler system, the correctable defects here are minor and there was substantial evidence that issuance of the conditional waiver prescribed herein would not adversely affect the health and safety of the patients. Rabin, P. J., Hopkins, Munder, Latham and Shapiro, JJ., concur.